May it please the Court. My name is Chris Nagren, representing Avista Corporation, along with my partner, Giovanna McLaughlin, here. And as this is a civil case involving a property dispute, I have a very... My partner will be able to solve the number of officials. I think if you just put it opposite of... It wants to refresh itself with the actual factual background here. I find it very refreshing. Excuse me, sir? I find it very refreshing. It's very difficult. Any time you have a question, Your Honor, I'll raise it for you. First of all, this case involves land grant under the 1864 Act to Northern Pacific, in this case, for a transcontinental railroad. That Act granted a 400-foot railroad right-of-way across the country for Northern Pacific to use in building the northern transcontinental route in the late... Actually, 1860s, 1870s time period. Now, they're specifically talking about Government Lot 5, and this diagram shows Government Lot 5, and shows that it's been divided into five subdivisions since then by Mr. Schultz's clients. Now, this railroad operated until the 1950s, approximately the late 1950s, in this location, upon which Avista, my client, and its predecessor was Washington Water Power. And Washington Water Power built a dam at Cabinet Gorge, which flooded the reservoir, created a reservoir which required, necessitated the movement of the railroad to the north side of the river. This is presently, Government Lot 5 is on the south side of the river. Now, at that time, Washington Water Power and Northern Pacific had agreed to relocate the railroad, but this railroad was still being used for the purposes of building the dam, and therefore, in the late 1950s, it was used to provide building materials to the dam, as well as other support for building up the dam. Prior to that, looking on the defendant's side of the equation here, in 1921, Arthur Hampton received a patent deed for Government Lot 5 from the United States. In 1952, Fannie Hampton, his widow, in regard to this reservoir that was being created, she deeds the land north of the right-of-way to Washington Water Power. Northern Pacific grants a flowage easement to Washington Water Power over its property for this reservoir. In October 1st, 1958, Northern Pacific quit claims the right-of-way to Sanders County, the local county subdivision, or local government subdivision in that area. Between 1958 through 1960, as I mentioned, the railroad uses the tracks to help supply equipment material to construction of the dam, and in 1961, February 8th, Sanders County formally accepts the deed from the railroad to Sanders County. Sometime in this period, and records are a little sketchy here, there's two roads that are placed on this road. This is important because there's a road that goes right here, runs this part of the line through the five parts of this later subdivision, and then another road comes up from the south and intersects here. So that exists sometime in the 1960s. Is that road on the right-of-way?  Now, on August 7th, 1962, so after the acceptance of the deed, Sanders County grants an easement to Washington Water Power with a warranty deed, no less, stating that they have title to this property, and they grant this easement to Washington Water Power for work associated with the reservoir right next to Government Lot 5. That was August 7th, 1962. On December 4th, 1962, Sanders County grants a similar easement to the United States for access to the reservoir across this right-of-way. Subsequently, 1975, the county grants permission to Washington Water Power to use the right-of-way for something totally unrelated to the dam building. From then until 2003, this land has been managed by Avisto, the successor to Washington Water Power, for recreational use and as part of an overall governmental FERC, Federal Energy Regulatory Commission project. This is what this is all about from your plan's perspective. It's difficult to see from the record what the real fight is about, but I gather that you've made some FERC filings and FERC management. If you lose this suit, what happens to your client if you lose your plan to title? You're correct, Your Honor, it's because Avisto is managing the property along with a number of stakeholders that are called as part of this project. If this land becomes the private individual's land, then it's taken out of the FERC project lands that are designated, and that would require basically amending the whole management of the reservoir because now you've got a place which I would presume private individuals would put docks and that type of thing on the reservoir, not for the recreational wildlife purposes that exist right now. I realize that's not the record. Are these stakeholders paying your client money? No, Your Honor, this is a joint project with the Army Corps of Engineers. Sanders County is one of the stakeholders, Montana Fish, Wildlife, and Parks. So no, it's no payments that are made in this regard. Subsequently, in 2003-2004, the individual defendants hire a local attorney who had been a county attorney for Sanders County to, quote, get their land back. That's from the deposition of the lead individual defendant. Then quick claim deeds are executed, prepared by this attorney, and executed by Sanders County, granting the right-of-way to the individual defendants at that point. Now, the relevant legal issues here, I believe, there's a couple of them. One is the district court issued a retroactive decree of abandonment back in 1958. We believe that's a mistake of law, and that the district court also said that since there was an existing road, that there was a public highway, part of the right-of-way, as opposed to—there's only 60 feet wide, as opposed to the right-of-way of 400 feet wide. Let's assume for the sake of argument that you're right on that, that one cannot retroactively declare an abandonment, unquote, isn't the effect of that that the abandonment, if it was as of the date of the court order in Sanders County, has a road there in nearly the same position? It doesn't refer to the private owners, but it goes to the counties. Isn't that the scenario? Well, if—so the date of the order, then, is effective in 2000— Hypothetically. It goes to the United States. Right. And it goes— Because it's no longer governed by the old statute, if it's happened in 2007. It's a rail-to-trail statute. That's right. 16 U.S.C. 1248. Anything after October 4th— Is the United States a party? No, the United States is not a party, because there was no, at this point, no retroactive decree when we first started this suit, or any decree at that point. So do you think the case needs to be dismissed for a want of a necessary party? And that could be what should occur here. Obviously, right now, we're focused on eliminating a retroactive decree, but, yes, if that were the situation, that the decree is the date— Well, at least we'll have to remand for having the United States as a party  And until there is some type of rule overturning that decree, it's premature to add the United States. Well, your big problem is our food case, which seems to endorse retroactive amendment. I can understand the logic of saying why you shouldn't be able to retroactively declare amendment, because that would seem to me to make the county's option a loose joke. But who seems to permit us to have any deal with food? Well, and my partner was going to address these specific cases, but very briefly on VIEW, what I would state that the problems with VIEW are, one, that that holding maintained that property in the public domain. By VIEW issuing a retroactive decree, which was only approximately two years after the date of abandonment, then that allowed the property to stay as part of the public domain. So it was only two years past. There was enough opportunity to review the record instead of 50 years, as we're talking here, and it maintained the intent and purpose of 43 U.S.C. 912, which was to take abandoned railroad right-of-ways and allow them to maintain public access and make the determination of abandonment not in the eyes of the landowner, but instead of the court. And so you have the same situation. The other thing that happened in VIEW, VIEW was originally filed in 1985. The Rails to Trails Act did not come into effect until October 4, 1988. So although VIEW, the Ninth Circuit opinion was in 1990, the original case was from 1985. The district court made a ruling prior to the Rails to Trails Act becoming effective. And so that didn't come into account here either. And as Justice Kaczynski said, that is now an important body of law that will affect the handling of and disposition of that right-of-way. So what we've got here, I believe, is an agreement based on the district court judges' ruling, as well as conceded, I believe, by the individual defendants, that a decree of abandonment by a court is required or an act of Congress. And we don't have that here, obviously. So although that was argued before, I believe that part of our briefs is moot now. But the intent of that legislation is what's important. The bill now, I'll read this directly from House Report 851, which is the legislative history for 43 U.S.C. 912. And it says, quote, The bill as it now stands might be construed to leave the determination of abandonment in the hands of the landowner, which is manifestly unworkable. Therefore, abandonment needs to be ascertained and decreed. And then it was further built upon in the same report that it is the stated public policy of this body to create a continuous strip of public transportation across the country under the 1864 Act. I believe that is the argument for why 43 912 should apply, but not retroactively. If you do not allow that time, the one-year period after the decree of abandonment, then you haven't given the public authorities sufficient time to act upon maintaining the public access as the U.S. Congress has indicated. Now, in the Trails Act... But if the road is built before the new act? The view was originally filed in 1985. I'm talking about your case. Our case. When was your road built? We don't have a clear record of that, but I believe that you can see it is the 1960s, early 1960s, late 1960s. Somewhere in there, there isn't any firm, this is when it happened. That's another issue we brought up. The county didn't follow any procedures for establishing a public highway there. It's just kind of happened over time. It's next to the reservoir that people like to use. My question is, if it's built before the decree, isn't that within a year of the abandonment? And wasn't it done under the old act? The building of the... Road. The building of the road, yes, it was most likely done approximately 1958 to 1962, somewhere in there. We just don't have... Within a year? And that would definitely be within the year of the October 1, 1958, quick claim deed. And that's what actually... Excuse me, sir. My question was, does it have to be after the decree? Even if the time is decree rather than the abandonment, under the former statute, isn't it within a year of the abandonment, meaning anything either before or within a year after? The 43 U.S.C. 912 does not state it has to be within one year after or one year before, so it could be read either way, before or after that date of abandonment as court decreed. But if the abandonment is effective 2007, that would affect who the property reverts to. Right. It could revert to the county under one interpretation and to the United States under another. That's right, under one law, one statute versus the other. Yes, Your Honor. And that would be, you know, as my client, we don't necessarily want ownership. We want to be in the public domain, which would be county or state in this case. And the county could auction it off. And then they would have to follow the procedures that are outlined in Montana Code, and of course they haven't done that. Or they could keep the claim deed. That's right. And, you know, they can't just issue a quick claim deed, which they did. That would be our point on that. Now, actually, what I'm going to do is… The county is not a party to this action either, right? The county is a party, yes. It is a party. Yes. And the county joined in the motion of the individual defendants disclaiming any interest in the property. So they're on the opposite side of you. That's correct, Your Honor. So do you have standing to dispute them? I believe we do, yes, Your Honor. That was something brought up, but we have standing under the most recent Samuel Johnson case that determined that being an affected landowner that we had standing. I don't believe that was disputed at the district court level or held. It doesn't matter. It's jurisdictional. So it doesn't matter whether it was disputed or not. Persuade me. How do you have standing? What you're trying to say is that the county is the owner of the land, and the county can speak for itself or not, or how does a third party like you have standing to litigate that issue for them and against them, do you? Well, I believe that we have an interest in the land as being part of this Federal Energy Regulatory Commission project, and we've represented that it's been part of the project. I mean, you have an interest in lots of things, but standing is not just a matter of interest. How do you have a stake in the property itself such as to understand it? It's only if you claim it's yours. We addressed this in our reply brief, and I guess I would point to that part of the reply brief is that with the two criteria we allege present, past, or threat injury to a property or civil right, we allege an injury that is distinguishable from injury to the public generally. Right, but this is a quiet title action, so essentially that's quite different. I thought your best standing argument was the alternative argument that you made that you own to the center line. Now, you raise that light in the game. Is that enough? Well, I believe it was, and as an adjacent landowner under the appropriations doctrine, we do have that standing, and I believe that was appropriate to be able to make that argument. The rest of it is pretty tenuous because we're talking about title of property. We're not talking about environmental effects and so forth. Well, I think that as an adjacent landowner, any development on this property is injurious to us, and we have standing under Montana law for that, under Little v. County Commissioners as cited in the brief. Now, what I'd like to do is we have approximately a minute and reserve that for rebuttal, and Ms. McLaughlin will probably talk about cases at that point. Thank you. Okay, we'll move here from the side. Good morning. Gregory Schultz on behalf of the Eppleys, Wolfe, Larson, Rickey, Stevens, Doyle, and the Sharps. These people are the heirs by descent, by blood and marriage, of the original homesteader on this parcel. So this family, one way or another, has been in possession of this parcel since that time. They now own the parcel in various percentages as tenants in common. So what do your clients want to do with the property? They have paradise political parking lot, big development, docks, and most of the public entities. Is that it? They want to do what they've done. They want to subdivide the parcel and sell off the lots. The fight here is for the shoreline. The shoreline is where the value is. The property values are markedly less if the parcels cannot be sold with shoreline, and my clients have always considered that they own the shoreline. I hope the panel has found this case as interesting as I have. As a land title lawyer, you don't come across one with this many twists and turns. They don't come along that often. And I urge the court to have some sympathy for the lower court in wrestling with some very unique facts in this case. This case is really an anomaly, I think, even under the abandonment statutes. I want to speak to some of them. I think the difficulty is, and who may mean one thing and something else, but how would you render title opinion if you allow abandonment to be declared 50 years later? That's a very difficult prospect. You're saying, well, it could be subject to a later court decree, either positive or negative. It's very tough if you're writing a title opinion. In my estimation, whether the decree is deemed effective in the fall of 1958 or whether it's deemed effective as of the date of entry in March of 07, the result is the same. If it's deemed effective in the fall of 1958, then the county did not establish its county road within the one-year period. My clients or their ancestors— Are you urging now that the retroactive decree is proper or is effective? I'm going to do everything I can to defend the lower court's opinion, Your Honor. I will be honest. My clients did not urge retroactivity. That was a plum which the lower court threw in, but there is a reason for that, if I may, and I think that the lower court was struggling with this really peculiar fact situation of an abandonment which took place 50 years ago and trying to breach that time gap because rights have vested by possession in that long interim period. We're dealing with factual events that took place 50 years ago. This is not a current-day abandonment proceeding by an active railroad, which is usually how these cases are postured, which brings me to something I want to treat before I forget it. Rails-to-trails, in my estimation, has no application to this case. The effective date of the rails-to-trails legislation is, as I recollect, April of 1988. For that statutory scheme to kick in, both the actual abandonment and the decree have to be post that date. In this case, the actual abandonment indisputably took place in the late 1950s under our view of the facts by the fall of 1950. If you read VIEW, one way to read VIEW is to say that there is no abandonment until you have both. So the physical abandonment is incomplete. So abandonment didn't happen until 2007. And if that's the case, then that 2007 is after 88. I suggest, Your Honor, that you do need both under rails-to-trails. You need actual abandonment, and you need the decree. But both those events have to happen after the operative date of rails-to-trails. This was the fact pattern before the Tenth Circuit in the Philadelphia Company case. And in that case, the court, like this panel, was addressing whether rails-to-trails should apply. And the court determined that because the operative facts, the acts of actual abandonment, occurred before the operative date of rails-to-trails, that rails-to-trails did not govern this particular abandonment. You know, we could engage in a fruitful discussion of this, but is there really any point in having this discussion when the one party that's directly affected by this ruling isn't a party to this lawsuit? You know, you may make a very good argument, and I bet you opposing counsel will agree with you, because whatever he says, he doesn't want the United States in here either. But there may be very good arguments on the other side. We have no one here to represent it. If we're going to resolve that issue, wouldn't we at the very least have to send it back and give the United States a chance to join in the action and give you a run for your money? The United States is not and never has been an indispensable party in an action under section. At the very least, it's a permissible party. I mean, it's interests, you know, as you stand there and talk, you are whittling away at the potential interests of the United States in this piece of parliament. You're saying don't look at rails to trails. That statute doesn't apply, and if we buy your argument, then the United States wouldn't get a chance to own this property. The United States, again, Your Honor, is not and historically has not been an indispensable party in proceedings under section 912. Those actions historically are initiated by the railroads, and there's nothing that states that the United States is an indispensable party in those actions. Now, I can see under the modern scheme, if this were a modern-day abandonment, if the railroad were active, if there was still a right of way to preserve for railroad purposes, which is what rails to trails requires, then this proceeding would start before the STB as an administrative agency action and perhaps from there went its way into the district court for the final decree. Again, that is not the scheme that this case has proceeded under. No party has asserted that this is a rails to trails case. But you're asking us to make a decision. If we get that far in the first instance in interpreting requirements under rails to trails, that the district court didn't have an opportunity to consider that If we get that far, do you think the proper remedies to abandon allow these things to be sorted out? Actually, no, I don't. All we're asking is that the court determine the competing claims to this property under 912 as between the successors to the patentee, the county, and the Vista. But along comes a statute that seems to be at least arguably applicable that has this other party that might in fact turn out to be the rightful owner of the property. You don't really expect us to decide the case without giving that party a chance to come in and argue a case. For one thing, the judgment could be opened up later on when the party comes along and says, Hey, we want to part with that proceeding. We now claim the property and we're not bound by the judgment. But isn't that my risk? Isn't that my client's risk? If this court determines that this right-of-way was abandoned and that my clients under 912 are the successors to the patentee and they hold title under 912, don't my clients take that ruling subject to some... I think you have to notify the United States of their potential interest. Your Honor, I agree under the modern scheme that that would inevitably happen because this would start out as an administrative proceeding. But I do not see the role of the United States here under the old form of section 912, which is the statute the parties have litigated here. How do you bring it under 912? Explain to me that once again. 912 requires actual abandonment in the sense of the common law notion, which is intent to abandon plus physical indicia of abandonment and the case... We all agree that that happened circa 1958. Correct. I mean, somewhere in the late 1950s for sure. That's correct. And the other provision, obviously, is that we need a decree from a court of competent jurisdiction, which is the district court. This is where the statute is confusing. The patentees can still be defeased. They can still lose their title if within the one-year period following either the actual abandonment or the decree, which is what the statute reads, which is problematic, a public body takes affirmative steps to create a public highway on that much of the right-of-way as is embraced by whatever that public body does. So within that one year, state law kicks in, and the local body must establish its public highway within that period. So assuming that Rails to Trails was never enacted under 912, if the district court enters a decree and there's an existing road, doesn't that satisfy that the title goes to Sanders County? If the district created it, are we talking about the current day entry? Yes. Yes, I mean, our point is if the decree is going to have its effect as of March of 07, then within the year that's since passed to March of 08, the county has to take some affirmative step to create a public highway. I mean, if it's already created it? But it is not, Your Honor. What happened here historically is that after the abandonment for decades, the public merely made use of this lovely high 60-foot wide berm to run their cars and wagons on. In time, in time, the county started to maintain that right-of-way. That's all that ever happened here. There's no entry in the county road books that this is a public right-of-way. The county never constructed a road on it. The county's attitude historically to the road has been... When you say they maintained it, what does that mean? Graining. Well, that sounds to me like they were... In time, in time, the road was established by public restrictions. So that gets us back to Judge Reinhart's question. For the body, the governmental body to create the road requires, there's specific requirements under Montana law, the county commissioners must meet and by resolution accept the grant. And in this case, that did not happen until two or three years after the physical abandonment. So the one-year period is not satisfied. Then thereafter, the public uses the road. One year of the decree, because it happened before the abandonment was completed for purposes, for our purposes, under the statute. They could have done it within one year after the decree. Again... It happened in 2007, the court decree. Yes. And then you say if the county complies before 2008, it's all right. But instead, the county did it, say, in 2006. The county, when this litigation was filed consistently through this litigation and on this appeal, the county's position is we, what all we want, all we claim is a 60-foot right-of-way, which is that right-of-way established by statute. Now we're back to another question. Whether it's 60-foot or 400 feet. A county road in this state is 60 feet wide and it's a surface easement only. But that would get us over the question of whether the county constructed a road or maintained a road within a year of the abandonment and order. If they did it before the order, they still done it. They don't have to wait until the order and then do it within the next year if they've already done it. The road has to be created under view in compliance with the requirements of state law that there's a limited universe of ways in which a county can create a road. Typically, they're created by petition of the surrounding landowners. Or they can be, as in this case, theoretically, created by a conveyance where the commissioners meet and accept it. The public use of the road is distinct from an action by the public body creating the road. So having said that, ultimately, eventually, it did create a road. The county acknowledged the public's prescriptive easement. And when this property went to subdivision, it took steps to ensure that that roadway was preserved in terms of a 60-foot platted roadway on my client's subdivision plan. And that's all the county wants. And the county has disclaimed any further interest in the parcel. The third potential issue here, the argument is, one, it happened in the 50s. So thereabouts may be two dates in there. Second is the decree of the district court in this case. But isn't there a third possibility that the date starts after we reach our decision and we'll remand to the district court for the entry of the final judgment when the one-year period starts? I found no authority that the statute is, that the decree element is told during appeal. Obviously, all the parties contemplated that. I do think, though, that if this panel affirms the lower court, the county is going to do exactly what the county has done, which is say all we assert is the 60-foot wide statutory roadway. We disclaim any interest. The rest of the property goes to the underlying landowners. That result will be the same. That has been the county's position as a matter of the record. You described the district court action as a plumb, but actually I think there's a fair reading of who that retroactivity is. There are two readings of who I think. In fact, I think the district court was too out of bounds in reading that. I think the district court, again, was struggling with this time gap and with the expectations of the parties over the 50-year intervening period. This family has been in possession of this ground since that date. It has paid the taxes on that ground since this date, that date 1920. There's no evidence in the record that the power company has an interest in this property or that even the county, regardless of the quitclaim going of record, that's never been in the public record. The assessor's plats show my clients as in possession, and they've paid for it all these years consistently. That's why I think the district court was wrestling with entry of a decree today triggered by events in the Eisenhower administration and trying to reconcile how have the parties' expectations in the interim developed. I understand that. We're hitting a little broader canvas here. If we say you can reach back in time, declare abandonment retroactively then, and say, sorry, county, you didn't do within a year of my newly imposed abandonment, it really doesn't work to effectuate the purpose of the statute, does it? If the purpose of the statute is to allow post-abandonment the establishment of a right-of-way, and if that is the public good here that's to be preserved, that's de facto. That's happened. Nobody disputes the existence of that. I understand the facts, but we could have a different factual situation entirely in which the county was asserted an interest, and a district court said, no, we're going to retroactively abandon it, and you didn't act within one year of the retroactive abandonment 50 years ago, therefore you're out. I don't see how that would work with statutory standing. Let me make a few remarks about the precedential value of what were to happen here. It is highly unlikely that any court is going to be dealing in the future with physical abandonment which took place actually even pre-1988. Perhaps so, but don't we have to get the statute right? Yes, and I think you have to apply the statute pre-rails to trails to get the proper decision that way. What this opinion will do, it will dictate, hopefully, how certain other parcels in the pathway of this seven-mile stretch are titled. It will have, hopefully, precedential value for that, because looking on the FERC maps filed by Avista, there are other stretches along this abandoned roadway where they're claiming their half, and that brings me to another point. Avista's position vis-a-vis the public agencies has been consistently, not that the county owns this right-of-way, but that we, Washington Water Power, then Avista own half of it, which means that Avista itself, formerly Washington Water Power, concedes that abandonment took place. Well, that was their alternative argument. That is the position they've taken in their filings with FERC since the 1980s, at least. That came out of the deposition. Pardon? You can see that it's nasty. I think they established their standing by the time the lower proceeding was almost finished. I mean, at that point, they asserted a property. This case started strictly as them trying to acquire a title in the county or sue the county for damages for supposedly giving away a public asset. We go through the entire lower court proceedings, and then finally in the summary judgment motion of papers, we find then Avista taking this alternative position, which, oh, by the way, if this has been abandoned, we own the outer half. And again, that goes to the expectations of the parties which have developed in this 50-year period, which the court's trying to wrestle with here. So are you conceding or not conceding? I'm not going to argue about standing. That's the county's argument. They raised it. We're here. My clients would like this adjudicated, at least as to these competing claims, as to their claims versus Avista and the county. The county disclaims they don't want anything to do with the parcel. They just want their public road. They have that. If we take this back subject to some challenge by the federal government, that's my client's risk and error in the proceeding. I think you guys are trying to settle this. Land title disputes tend to be black or white, all or nothing. It's not a money issue. Now you are standing in the highway and there's a big truck coming down the road with USA painted on it, and neither of you want that to happen. So isn't there sort of an incentive to settle your differences and avoid that big truck? I can answer that question, but I have to speak outside the record. The Department of the Interior has issued disclaimers for stretches of this road, just as has the county and the state. This is such a historical animal to all these bodies. They don't have any interest in this parcel anymore. So we'll take it back to get title insurance, without that little exception, for any interest of the United States. Perhaps we'll have to then pursue the Department of the Interior. But that's a consummation devoutly to be wished for my clients, and we'll take that risk. Okay, thank you. I think there was a bit of time left for rebuttal. Your Honors, I just want to point out one case that I think addresses your concern, Judge Reinhart. In King County versus Burlington Northern, it was the Western District of Washington decision in 1994. There, the railroad completed actual abandonment, and four years later, the county passed an ordinance to encompass this right-of-way into their trail system. So they established a highway four years after the actual abandonment, and then later went on to seek a decree to make their interest in the right-of-way complete. And the court specifically denied the railroad's argument that the one-year period ran from actual abandonment, rather than from the decree, and found that since the county had already embraced the right-of-way into its public highway system, all that was necessary was the decree from that court that would then make the county's interest complete. So I think that that case may address your concern about the county. Well, the interesting thing about that case is that the date of the decree was measured from the decision of the Washington Supreme Court, not the District Court, right? I believe it was measured from the Washington, sorry, from the District Court. No, I think you can look at it. So that would mean that, as yet, if under that clause, that case of the decree of abandonment is canceled, you have to wait until the decision. Have you followed that case? In... well, that might be the case for... In any event, you don't have to build a road again if you've already built it. You don't have to build it after the decree if you've built it before. Correct. Right. And, you know, VIEW is... I understand that there are two ways to read VIEW. Let me ask one question about VIEW, because I was puzzled by VIEW, and I thought maybe I'd figure it out. VIEW seems to say at the end that you need both abandonment and the decree if the grant came from the government. But if it came from a private company, then you only need the abandonment. Is that... I don't want to ask if the decision makes sense, but does that reading of the decision make sense? I don't believe so, Your Honor. Well, no reading would make that decision. It's more than one thing. It says at the end, however, the district court's disposition... It says basically as to the government grant, you need both things, relying on the Idaho 2 case. Correct. You need both the abandonment and the decree. Then it says, however, the district court's disposition fails to consider that some of the plaintiffs may have reversionary rights in the land by virtue of the private land grants. Because the district court did not rule on the issue, this opinion does not affect the claims of those landowners who may have reversionary interests under private land grants. We affirm the district court's opinion regarding the act of Congress grants, but reversionary men prefer the proceedings regarding the private land grants in this case. So that explains the second half, which after first saying you need both the abandonment and the decree, then goes on to say you only need the abandonment, which I think is explained by the fact that the court's distinguishing between land that's pursuant to a public land grant and land that's pursuant to a private land grant. That may be the case, Your Honor, but in this case the right-of-way was granted to the northern Pacific pursuant to the public. Which would mean it's covered by the first half of the view. Where you need both. Correct. And, you know, view relies or adopted the interpretation of the court in Idaho 2. And in Idaho 2, the court specifically said that with regard to the highway exceptions clause, that the land embraced in a public highway established within one year of the declaration of forfeiture or abandonment belongs to the state. Now, view then interpreted that as, although it adopted the Idaho 2 case, it said specifically that the land embraced in a public highway established in one year of the declaration or forfeiture or abandonment shall belong to the state. So... The view position is that the land went to the county. Correct. The entire right-of-way. Correct. The entire right-of-way was dedicated to the county, and the entire right-of-way was accepted by the county in 1961. So title remains with the county. But the county quit trying this to the landowners. And we believe that was improper. And you say you have a right to bid for that land. Correct. And as I gather, the county doesn't contest the fact that if it wants to give away the land, it has to conduct an auction. Right. The county has not contested that. If title does remain with the county, the county would have to go through the staff... Is there any standing if you say that we wish to buy the land at an auction, and the county is trying to give it away? Yeah. Why is this something that you can raise here? I mean, it's one thing to say, look, the county did this. Why don't you go to the state courts and get administrative review of what the county proposes to have done? But why can't you raise it in this proceedings? In this proceedings, we have a quit claim. I mean, you can tie the Senate aside by going to state court and showing that somehow the quit claim is invalid. But why is this something you can raise here? As far as standing goes to raise this? I think by... You're collaterally attacking an action by the county that, you know, you can tie... It's an actionable governmental body, and you can get it reviewed, I suppose. I mean, I assume Montana has an administrative review statute which allows you to challenge actions of governmental bodies. But until you do, why doesn't that... Why aren't we bound by what the county did here? And what the county did is the quit claim. How can you challenge in these federal proceedings an action by the county that you claim violates state law? Well, first of all, we needed to figure out who had title, who has title to this right of claim. Who got the quit claim? I mean, there's got to be. If you think the county shouldn't have done that, you need to go get that action by the county undone. If you think the quit claim was improper, or the county violates state law by issuing it, you have to challenge it, just like any other governmental action. You can't sort of act like it doesn't exist. Well, we're challenging it as part of this action. Well, why can't you challenge it as part of this action? There are ways to challenge governmental actions in Montana, I assume, just like if you want to challenge an action of the EPA, you bring a review under the Administrative Procedure Act. In California, if you have a state or local entity that takes an action, you bring a writ of mandate to the Superior Court to challenge the action. You haven't done that, right? No, we have not. The county denies having title to that right of way. They've consistently denied the state of their right. That's right, but they also issued a quit claim. They said, you know, whatever rights we have, and you want to say, no, the quit claim is improper, they should have done this other thing under state law. I just don't think this is the right procedure for you to challenge again. The place to challenge that is in state court under the Administrative Review Procedures, which you haven't done. No, we have not. Maybe too late. I think settlement is the answer to this case. You know, you're all here, you know, that courthouse steps are very close by, and courthouse steps always are a great inducement to settlement, whether you're walking into the courthouse or whether you're walking out. It's actually because our circuit mediators are good. Oh, we have fabulous circuit mediators. Our circuit mediators are so good, they actually settle death cases, capital cases, believe it or not. This is a real case where they actually managed to settle not only a criminal case, but a criminal case involving capital punishment. So they're really very good. We keep getting letters and phone calls from lawyers to tell us how good they are. Would you all be interested in perhaps contacting them and seeing whether... Having them contact you. Or vice versa. You know what, we're going to defer submission for a week, and if you are interested in pursuing further settlement discussions or contacting the mediators, you can do that in the intervening week, and they will let us know, and we can then continue the deferral if so long as you're in serious discussions. If we don't hear anything in a week, we'll submit the case in silence. How's that? That sounds great. Thank you. All right. Thank you, counsel. Cases argued will not be submitted for a week. We are now adjourned. Thank you.
judges: Kozinski, Reinhardt, Thomas